1

2

3

4

5                      UNITED STATES DISTRICT COURT

6                      NORTHERN DISTRICT OF CALIFORNIA

7

8   ACTIVEVIDEO NETWORKS, INC.,                No. C-13-1980 EMC

9              Plaintiff,

10       v.                                    **ORDER DENYING DEFENDANT'S
                                               MOTION TO DISMISS**
11  TRANS VIDEO ELECTRONICS, LTD.,
                                               **(Docket No. 8)**
12             Defendant.
    _____/
13

14

15       Plaintiff ActiveVideo Networks, Inc. ("AV") initiated this lawsuit against Trans Video

16  Electronics, Ltd. ("TVE"), asserting claims for declaratory relief.  More specifically, AV seeks a

17  declaration that it does not infringe on two TVE patents, *i.e.*, the '936 patent and the '801 patent, and

18  further seeks a declaration that the two patents are invalid.  Currently pending before the Court is

19  TVE's motion to dismiss.  In the motion, TVE challenges both subject matter jurisdiction and

20  personal jurisdiction.  According to TVE, subject matter jurisdiction is lacking because the letter

21  TVE sent to AV, which prompted AV to file suit, was not enough to give rise to a case or

22  controversy.  As for personal jurisdiction, TVE argues that it is lacking because it has insufficient

23  contacts with the forum, particularly in the last few years.

24       Having considered the parties' briefs and accompanying submissions, the Court hereby

25  **DENIES** TVE's motion in its entirety.

26

27

28

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

# I. **DISCUSSION**

A.    Subject Matter Jurisdiction

    1.    Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may move for a dismissal based on a lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A party can make either a facial or a factual attack on subject matter jurisdiction. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).[1] While TVE initially made a facial attack in its motion, it has now effectively made a factual attack on subject matter jurisdiction, in particular, through its submission of a covenant not to sue. Where a factual motion to dismiss is made and only written materials are submitted for the court's consideration, a plaintiff need only establish a prima facie case of jurisdiction. *See Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1985); *cf. AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012) (with respect to personal jurisdiction, stating that "[b]ecause the district court relied on the complaint and written submissions without holding an evidentiary hearing, [plaintiff] is required to allege only a prima facie showing that the defendants are subject to personal jurisdiction in Wyoming").

    2.    Declaratory Judgment Act

In the instant case, AV has filed a claim for declaratory relief. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The phrase 'a case of actual controversy' in the Act refers to the

---

[1] "For procedural matters that are not unique to patent issues, [a court] appl[ies] the . . . law of the regional circuit" and not the Federal Circuit. *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390 n.2 (Fed. Cir. 1996); *see also In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1377 (Fed. Cir. 2010) (stating that "'[w]e have generally deferred to regional circuit law when the issue involves an interpretation of the Federal Rules of Civil Procedure'" – unless, *e.g.*, a "determination implicates an issue of substantive law"); *Research Corp. Techs. v. Microsoft Corp.*, 536 F.3d 1247, 1255 (Fed. Cir. 2008) (stating that "[t]he Federal Circuit applies its own law with respect to issues of substantive patent law and certain procedural issues pertaining to patent law, but applies the law of our sister circuits to non-patent issues"). In any event, there is nothing to indicate that the Federal Circuit law on Rule 12(b)(1) facial or factual attacks materially differs from that in the Ninth Circuit. *See, e.g.*, *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993).

United States District Court

For the Northern District of California

1    types of 'cases' and 'controversies' that are justiciable under Article III of the Constitution."

2    *Association for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1318 (Fed.

3    Cir. 2012), *rev'd in part on other grounds by Association for Molecular Pathology v. Myriad*

4    *Genetics, Inc.*, 133 S. Ct. 2107 (2013).  Thus, in a declaratory judgment case, if there is no case or

5    controversy, there can be neither a claim for declaratory relief nor Article III subject matter

6    jurisdiction.  *See SanDisk Corp. v. ST Microelecs., Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007)

7    (stating that, because "[t]he 'actual controversy' requirement of the Declaratory Judgment Act is

8    rooted in Article III of the Constitution, . . . our jurisdiction extends only to matters that are Article

9    III cases or controversies").

10        In *MedImmune, Inc. v. Genentech*, 549 U.S. 118 (2007), the Supreme Court examined – in

11    the context of a patent license dispute – the Article III case or controversy requirement as its relates

12    to the Declaratory Judgment Act.  It explained that all that the declaratory judgment plaintiff must

13    do to show a case or controversy is prove that the facts alleged, "'*under all the circumstances*, show

14    that there is a substantial controversy, between parties having adverse legal interests, of sufficient

15    immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Id.* at 127 (emphasis

16    added).  This controversy must be "'definite and concrete, touching the legal relations of parties

17    having adverse legal interests,'" such that the dispute is "'real and substantial'" and "'admi[ts] of

18    specific relief through a decree of a conclusive character, as distinguished from an opinion advising

19    what the law would be upon a hypothetical state of facts.'"[2]  *Id.*  In adopting this test, the Supreme

20    Court notably rejected the "reasonable apprehension of imminent suit" test that the Federal Circuit

21    had been using at that time.  *See id.* at 132 n.11.  In post-*MedImmune* cases, the Federal Circuit

22    conceded that its former test was a more stringent – and thus harder – standard to meet than that

23    articulated in *MedImmune*.  *See ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1348 (Fed. Cir.

24    2011) (noting that "*MedImmune* rejected our prior, more stringent standard insofar as it included a

25    requirement of a 'reasonable apprehension of imminent suit'").

26

27    _____

      [2] The Federal Circuit has noted that "*MedImmune* may have lowered the bar for determining
28    declaratory judgment jurisdiction in all patent cases."  *Hewlett-Packard Co. v. Acceleron LLC*, 587
      F.3d 1358, 1361 (Fed. Cir. 2009).

United States District Court

For the Northern District of California

Since *MedImmune*, the Federal Circuit[3] has noted that, in the context of patent disputes, an actual controversy requires "an injury in fact traceable to the patentee," which exists only if the plaintiff has alleged "both (1) an affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity." *Association for Molecular Pathology*, 689 F.3d at 1318.  Here, there is no dispute regarding the second factor because AV already makes the products that are being accused of infringing.  *See* Compl., Ex. C (letter).  Accordingly, the only question for the Court is whether TVE has sufficiently engaged in an affirmative act or acts related to the enforcement of its patent rights.

3.    Affirmative Act

The Federal Circuit has indicated that, for an affirmative act, "more is required than 'a communication from a patent owner to another party, merely identifying its patent and the other's product line.'  [But] [h]ow much more is required is determined on a case-by-case analysis." *3M*, 673 F.3d at 1378-79.

In *Cepheid v. Roche Molecular Sys., Inc.*, No. C-12-4411 EMC, 2013 U.S. Dist. LEXIS 7446 (N.D. Cal. Jan. 17, 2013), this Court took note of factors that have typically been considered by courts in making this determination:

1.    the strength of any threatening language in communications between the parties;

2.    the depth and extent of infringement analysis conducted by the patent holder;

3.    whether the patent holder imposed a deadline to respond;

4.    any prior litigation between the parties;

5.    the patent holder's history of enforcing the patent at issue;

6.    whether the patent holder's threats have induced the alleged infringer to change its behavior;

---

[3] In resolving the pending motion, this Court is bound not only by Supreme Court precedent such as *MedImmune* above but also by Federal Circuit precedent (as opposed to Ninth Circuit precedent).  The Federal Circuit has expressly held that "'[w]hether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law.'"  *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012); *see also Microchip Tech. Inc. v. Chamberlain Group*, 441 F.3d 936, 940 (Fed. Cir. 2006) (stating that "Federal Circuit law governs . . . as to whether an actual controversy exists under the Declaratory Judgment Act when the underlying merits of an action involve patent infringement and/or validity").

United States District Court

For the Northern District of California

7.      the number of times the patent holder has contacted the alleged infringer;

8.      whether the patent holder is simply a holding company with no source of income other than

         enforcing patent rights;

9.      whether the patentee refused to give assurance it will not enforce its patent;

10.     whether the patent holder has identified a specific patent and specific infringing products;

11.     the extent of the patent holder's familiarity with the product prior to suit;

12.     the length of time that transpired after the patent holder asserted infringement; and

13.     whether communications initiated by the declaratory judgment plaintiff have the appearance

         of an attempt to create a controversy in anticipation of filing suit.

*See id.* at *18-20.

        Notably, the Federal Circuit has commented on many of the above factors.  For example, with respect to the first factor above, the court has emphasized that there need not be an *explicit* threat to sue for infringement or an *explicit* demand to acquire a license.  This is because

> [t]he purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as "litigation" or "infringement." . . . But it is implausible (especially after *MedImmune* and several post-*MedImmune* decisions from this court) to expect that a competent lawyer drafting such correspondence for a patent owner would identify specific claims, present claim charts, and explicitly allege infringement.

*Hewlett-Packard*, 587 F.3d at 1362; *see also 3M*, 673 F.3d at 1379 (noting that the declaratory judgment defendant "*effectively charged* [the declaratory judgment plaintiff] with infringement") (emphasis added).  And "[o]f course, if 'a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support [declaratory judgment] jurisdiction.'"  *Hewlett-Packard*, 587 F.3d at 1362 (emphasis in original).

        As for the third factor above, the Federal Circuit has noted that the fact that the patentee does not impose a deadline to respond to its communication is not dispositive.  "While a patentee's imposition of a deadline is a circumstance to consider . . . , [the Federal Circuit has] found that declaratory judgment jurisdiction existed in cases in which the patentee's communications did not impose strict deadlines."  *3M*, 673 F.3d at 1380.  In *3M* itself, the court noted that "it would make little sense if a deadline to respond were imposed on 3M [the alleged infringer]" because it had

already denied infringement and "it was [the patent holder] Avery's turn to act – [and] it represented that claim charts were forthcoming." *Id.*  The court added that, by stating that it would send claim charts, "Avery perhaps signaled its intent to escalate the dispute." *Id.*

For the ninth factor above, the Federal Circuit has also noted that a patentee's failure to give assurances that it will not enforce its patent is not dispositive.  *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008) (stating that "[a] patentee has no obligation to spend the time and money to test a competitors' product nor to make a definitive determination, at the time and place of the competitors' choosing, that it will never bring an infringement suit").  However, the Federal Circuit has noted that even a statement that the patentee has no plan to sue does not necessarily eliminate a case or controversy.  In *SanDisk*, for example, the court gave such a statement little weight because the patentee had

> engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights despite [that one] statement. Having approached [the alleged infringer] SanDisk, having made a studied and considered determination of infringement by SanDisk, having communicated that determination to SanDisk, and then saying that it does not intend to sue, [the patent holder] ST is engaging in the kinds of "extra-judicial patent enforcement with scare-the-customer-and-run tactics" that the Declaratory Judgment Act was intended to obviate.

*SanDisk*, 480 F.3d at 1383.

Finally, it is worth noting that one factor that the Federal Circuit has explicitly rejected as a consideration is

> whether [the patentee] had conducted an adequate investigation or whether it subjectively believed [the other party] was infringing.  "The test [for declaratory judgment jurisdiction in patent cases], however stated, is *objective* . . . ."  "Indeed, it is the objective words and actions of the patentee that are controlling."  Thus, conduct that can be reasonably inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction.

*Hewlett-Packard*, 587 F.3d at 1363 (emphasis in original).

### 4. Examples of Affirmative Acts

Before analyzing whether TVE has engaged in adequate affirmative acts to give rise to a case or controversy, the Court takes into account several Federal Circuit cases where the Federal Circuit did find sufficient affirmative acts.

**United States District Court**
For the Northern District of California

6

United States District Court

For the Northern District of California

- *Association for Molecular Pathology*, 689 F.3d at 1303.  Here, the patent holder Myriad sent the alleged infringer Dr. Ostrer a letter stating that "that Myriad was aware that Ostrer was either currently providing, or was interested in initiating, BRCA1 diagnostic testing services and that Myriad, as holder of U.S. patents covering the BRCA1 gene and diagnostic testing of BRCA1, was making available to his institution, NYU Medical Center, a limited collaborative license.  The collaborative license required NYU to make a payment to Myriad for each non-research BRCA test performed." *Id.* at 1320.  In short, "Myriad [was] demand[ing] a royalty under its patents from Dr. Ostrer . . . ." *Id.*  At the same time, Dr. Ostrer was aware of the fact that Myriad was asserting its patent rights against other similarly situated parties, including in patent infringement suits.  *See id.*  Based on these facts, the Federal Circuit upheld declaratory judgment jurisdiction over the case.

- *Hewlett-Packard*, 587 F.3d at 1358.  Here, the patent holder Acceleron sent a letter to the alleged infringer HP in which it identified the patent at issue and described the patent as relating to a specific product line belonging to HP.  Acceleron asked HP not to file suit but also imposed a two-week deadline for HP to respond.  Subsequently, Acceleron sent a second letter, in which it again imposed a two-week deadline and "insisted that if HP did not respond to its original letter by the deadline, it would understand that HP did not 'have anything to say about the merits of this patent, or its relevance to [HP's] Blade Server products.'" *Id.* at 1362-63 (emphasis omitted).  On appeal to the Federal Circuit, Acceleron argued a case or controversy does not obtain simply because a patent owner "contact[s] another party to suggest incorporating the patented technology into the other party's product, or to attempt to sell the patent to the other party." *Id.* at 1363.  The Federal Circuit was not convinced because, while those scenarios do occur – "perhaps quite frequently" – "we doubt that in those situations, the patent owners would assert a patent as 'relevant' to the other party's specific product line, impose such a short deadline for a response, and insist the other party not file suit."  The court "also agree[d] with the district court that 'the receipt of such correspondence from a non-competitor patent holding company . . . may invoke a different reaction than would a meet-and-discuss inquiry by a competitor, presumably with intellectual

property of its own to place on the bargaining table.'" *Id.* "The facts of this case, when viewed objectively and in totality, show that Acceleron took the affirmative step of twice contacting HP directly, making an implied assertion of its rights under the '021 patent against HP's Blade Server products, and HP disagreed [as evidenced by its decision to file suit for declaratory relief]. Therefore, we hold that there is declaratory judgment jurisdiction arising from a 'definite and concrete' dispute between HP and Acceleron . . . ." *Id.* at 1364.

- *3M*, 673 F.3d at 1372. Here, the patent holder Avery contacted the alleged infringer 3M and "expressly stated that a specific product, the Diamond Grade DG 3, 'may infringe' the . . . patents [at issue] and that 'licenses are available.'" *Id.* at 1379. During a subsequent telephone call, 3M rejected the license offer. During that same call, Avery informed 3M that it had analyzed the Diamond Grade DG 3 with regard to the . . . patents [at issue] and that Avery would provide 3M with claim charts." *Id.* The Federal Circuit held that these communications between the parties were sufficient to give rise to a case or controversy. *See id.*

- *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008). Here, the Federal Circuit held that there was a case or controversy because, "after receiving several threats itself [in the form of four letters suggesting that Micron, the alleged infringer, should license the technology of MOSAID, the patent holder], Micron watched MOSAID sue each of the other leading DRAM manufacturers." *Id.* at 901. The court added that "threatening letters and behavioral observations are not Micron's only evidence about the authenticity of this dispute. MOSAID's recent public statements and annual reports also confirm its intent to continue an aggressive litigation strategy." *Id.*

     5.    <u>Analysis in Instant Case</u>

          a.    <u>The Letter</u>

Given the above standards and cases, there would clearly a case or controversy in the instant case if the Court were to consider solely the letter that TVE sent to AV on or about April 11, 2013. The letter states as follows:

Our firm represents Trans Video Electronics Ltd. ("TVE"), who is the owner of the above-referenced '936 Patent and '801 Patent.

We have reviewed the available information for the following ActiveVideo products: **CloudTV H5 products and affiliated services.**

Based on publicly-available information, we believe that at least these products **require a license** under the '936 Patent and/or the '801 Patent. The '936 Patent and the '801 Patent cover systems and methods for operating, running, and/or otherwise using content delivery networks for distribution of video content.

TVE values its intellectual property and **cannot permit infringement of its patents to continue.** TVE is, however, willing to consider quickly and amicably resolving this matter through a business arrangement. TVE has other patents in the same family as the '936 Patent and the '801 Patent that may also be relevant to [company's][4] products. We are currently willing to consider licensing this product and TVE's patent portfolio in any agreement we reach.

**Please note that TVE has initiated and is currently litigating multiple patent infringement cases asserting the '936 Patent and the '801 Patent against numerous video content distributors, network back-end suppliers, and other companies that routinely use content delivery networks for distribution of video content in the course of doing business.**

**Additionally, TVE has already entered into licensing agreements with some of the leading technology companies operating in the video content-delivery network space, including Apple, DirecTV and EchoStar.** The licensees of TVE's patents have recognized the technological advancements embodies in the '936 Patent and the '801 Patent and negotiated terms for continuing to use TVE's patented technology in their day-to-day operations **without incurring any unnecessary expenses associated with other forms of resolving such an issue.**

To help expedite your review and substantive response, provided on the enclosed DVD are the following:

• Copies of TVE's '936 Patent and the '801 Patent; and

• Copies of the prosecution histories for the '936 Patent and the '801 Patent.

**Your prompt written response within 30 days of receipt of this correspondence would be greatly appreciated.** We also propose meeting with you to discuss resolution of this matter. Please contact me directly to arrange for either an in-person meeting or a follow-up discussion.

---

[4] The letter sent to AV specifically referred to "[company's]," which indicates that the letter was based on a form letter used by TVE.

United States District Court

For the Northern District of California

1    Compl., Ex. C (letter) (emphasis added).

2          While the letter does not, as TVE points out, contain an explicit threat to sue for

3    infringement, as noted above, an explicit threat is not necessary.  Indeed, there need not be any kind

4    of threat.  So long as there is an actual charge of infringement, *Hewlett-Packard*, 587 F.3d at 1362

5    (stating that, "if 'a party has actually been charged with infringement of the patent, there is,

6    *necessarily*, a case or controversy adequate to support [declaratory judgment] jurisdiction'")

7    (emphasis in original), or even an effective charge of infringement, *see 3M*, 673 F.3d at 1379 (noting

8    that the declaratory judgment defendant "effectively charged [the declaratory judgment plaintiff]

9    with infringement"), that is enough to give rise to a case or controversy, particularly where a specific

10   infringing product is identified by the patentee.  Here, at very least, there was an effective charge of

11   infringement by TVE with respect to AV's CloudTV H5 products and affiliated services.  In the

12   letter, TVE states that "we believe that at least [these] products *require a license* under the '936

13   Patent and/or the '801 Patent."  Compl., Ex. C (letter) (emphasis added).  Clearly there would be no

14   need for a license if the AV products did not practice the patented technology.[5]  Furthermore, there

15   is all but an explicit charge of infringement when TVE states in the letter that it "values its

16   intellectual property and cannot permit infringement of its patents to continue."  Compl., Ex. C

17   (letter).  This same statement also implies a threat to sue based on AV's infringement – even more

18   so when combined with the subsequent statements that (1) "TVE has initiated and is currently

19   litigating multiple patent infringement cases asserting the '936 Patent and the '801 Patent against

20   numerous" other companies and that (2) a response within thirty days is desired.  Compl., Ex. C

21   (letter).  In light of all of the above statements, TVE's contention that "[t]he only clear message in

22   [its] letter was that it wished to talk with ActiveVideo about a business deal," Mot. at 11, borders on

23   the frivolous.

24

25   ────────────────────

26        [5] In its reply brief, TVE tries to take away from the force of the above statement by asserting
     that it simply reached out to AV "to gain a more detailed understanding" of its product – "[i]n fact,
27   at the time the Letter was sent, TVE did not have actual access to the CloudTV product or have
     enough information on CloudTV to satisfy the threshold prefiling investigation required by Rule 11
28   of the Federal Rules of Civil Procedure."  Reply at 2.  The clear message of the letter, however, is a
     demand for a license agreement, not a request for more information.

None of TVE's other arguments is persuasive either.  For example, TVE suggests that one letter is not enough to establish a case or controversy, but Federal Circuit has never held such.  Rather, the Federal Circuit cases indicate that it is the content of a letter that matters.  For instance, in *Association of Molecular Pathology*, the facts consisted of (1) a single letter from the patent holder basically demanding a royalty for a license and (2) knowledge on the part of the alleged infringer that the patent holder had initiated patent infringement lawsuits against others.  Based on these facts – which are essentially much the same as the facts in the instant case – the Federal Circuit determined that there was subject matter jurisdiction.

TVE also puts significance on the fact that, in its letter, it never specified that any adverse consequences would flow if AV failed to comply with the thirty-day deadline.  But similar to above, there is no Federal Circuit authority holding that a demand for a response within a certain deadline must be accompanied by a threat of adverse consequences before it can be given any weight.  Indeed, the fact that a deadline is imposed in and of itself implies a threat of adverse consequences.  And in any event, adverse consequences here were clearly put into play by the fact that TVE referenced, in its letter, the multiple patent infringement lawsuits that it was already litigating.  That inference is strengthened by TVE's reference to the alternative to negotiating a license – the incurrence of "unnecessary expenses associated with *other* forms of resolving an issue."  Compl., Ex. C (letter) (emphasis added).

In its papers, TVE makes the further point that there has been no history of litigation or contact between the parties.  While that may be true, that is hardly dispositive and no case so holds.  That fact does not detract from the content of the letter.  Nor does it detract from the fact that TVE has engaged – as it admits in the letter – in multiple patent infringement lawsuits against other parties.

As for TVE's repeated argument that AV "only imagines that TVE was on the verge of filing suit" and that nothing "could reasonably indicate that a patent infringement suit was imminent," Mot. at 8, that argument is unavailing because it places stock on the "reasonable apprehension of imminent suit" test which the Supreme Court explicitly rejected in *MedImmune*.

Finally, the primary cases on which TVE relies are either distinguishable and/or actually lend support to AV's position.  For instance:

- In *Applera Corp. v. Michigan Diagnostics, LLC*, 594 F. Supp. 2d 150 (D. Mass. 2009), the district court found no jurisdiction because of the specific content of the letters that the parties had exchanged: "The correspondence between the parties itself bespeaks the lack of any specific dispute: 'it would certainly be most beneficial if you could provide us with your evaluation to see where, if any, there is disagreement between us.  This would quite clearly facilitate the resolution of any potential problem'; 'Once we know [which claims of which patents Applied Biosystems believes are infringed], we can certainly be in a better position to evaluate your position.'"  *Id.* at 160.

- In *Prasco*, the Federal Circuit did take note that a patentee "*can* cause . . . injury . . . by creating a reasonable apprehension of an infringement suit," *Prasco*, 537 F.3d at 1339 (emphasis added), but it did not hold that there must be such apprehension before there can be a case or controversy.  Indeed, such a holding would be contrary to *MedImmune*, the Supreme Court case that preceded *Prasco*.

- In *ABB*, the Federal Circuit found that there was a case or controversy because the patent holder advised the alleged infringers that they had no rights under a license and stated that it would act vigorously to protect or defend its rights.  *See ABB*, 635 F.3d at 1348.  Here, TVE basically gave the same warning to AV that it would vigorously protect or defend its rights by stating that "TVE values its intellectual property and cannot permit infringement of its patents to continue."  Compl., Ex. C (letter).  The fact that TVE then stated that it was "willing to consider quickly and amicably resolving this matter through a business arrangement" is not enough to moot out a case or controversy, particularly when it made a thinly veiled reference to the costly alternative method of resolving an issue.  *See* Compl., Ex. C (letter).  Even if TVE's statement could be interpreted as suggesting it does not intend to sue (at least not yet), a statement by the patentee that it has no plan to sue does not necessarily eliminate a case or controversy.  In *SanDisk*, in fact, the Federal Circuit gave such a statement little weight because "[h]aving approached [the alleged infringer] SanDisk,

United States District Court
For the Northern District of California

having made a studied and considered determination of infringement by SanDisk, having

communicated that determination to SanDisk, and then saying that it does not intend to sue,

[the patent holder] ST is engaging in the kinds of 'extra-judicial patent enforcement with

scare-the-customer-and-run tactics' that the Declaratory Judgment Act was intended to

obviate." *SanDisk*, 480 F.3d at 1383.

- In *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377 (Fed. Cir. 2010), the

Federal Circuit did indicate that, where an alleged infringer manufactures a controversy, that

cannot give rise to a case or controversy for purposes of the Declaratory Judgment Act.  But

the facts in *Innovative* are far different from those in the case at hand.  For example, in

*Innovative*, the alleged infringer initiated conversations with the patent holder, not the other

way around, and even then the communications were with employees of the patent holder

who did not hold decision making positions and who had not seen and made any evaluation

of infringement.  *See id.* at 1381; *see also 3M*, 673 F.3d at 1381 (highlighting these facts in

*Innovative*).

> b.    Covenant Not to Sue

The only question remaining for the Court is whether there is subject matter jurisdiction now

that TVE has submitted a covenant not to sue.  The most recent covenant not to sue offered by TVE

reads as follows:

> TVE unconditionally agrees not to sue ActiveVideo as to any claim of
> the Patents-in-Suit based upon ActiveVideo's use, manufacture,
> development, design, marketing, licensing, distributing, offering for
> sale, or selling the CloudTV H5 product, and related services, as it
> exists today or as it has existed in the past.  This covenant is personal
> in nature and cannot be transferred.

Docket No. 43 (Ex. D) (Djurovich Decl. ¶ 4).  AV contends that the above covenant not to sue is

insufficient to divest this Court of subject matter jurisdiction; AV asserts that a covenant would be

adequate only if along the lines of the following:

> TransVideo Electronics, Ltd. unconditionally agrees not to sue
> ActiveVideo Networks, Inc. or its customers now or in the future for
> infringement of any claim of the Patents-in-Suit, based upon the
> manufacture, development, design, marketing, licensing, distribution,
> use, offer for sale, sale or importation of any current or prior

United States District Court

For the Northern District of California

1      ActiveVideo product or service related to ActiveVideo's CloudTV™
2      H5 platform, its components, and its application.

3  Docket No. 43 (Ex. C) (letter).

4      There are several differences between the two covenants submitted by the parties. For

5  example, AV's covenant refers to importation while TVE's does not. Also, TVE's covenant is

6  restricted to the CloudTV H5 product and related services; AV's covenant seems broader, extending

7  to any AV product or service related to the CloudTV H5 platform, its components, and its

8  application. However, the critical difference between the two covenants is whether AV's *customers*

9  are protected from suit for infringement. Under TVE's covenant, AV's customers are not protected;

10  under AV's covenant, its customers are.

11      As to this issue, the Court first takes note of the Federal Circuit's decision in *Microchip*

12  *Technology Inc. v. Chamberlain Group*, 441 F.3d 936 (Fed. Cir. 2006).[6] In *Microchip*, the

13  declaratory plaintiff had all but admitted that it had no reasonable apprehension that it would be sued

14  for infringement (direct or indirect). *See, e.g.*, *id.* at 942-43 (noting that general counsel for

15  declaratory plaintiff had admitted in her deposition that there was a "'patent peace'" with respect to

16  the patents at issue, that declaratory plaintiff failed to identify "a single legal claim that it believes

17  [declaratory defendant] could have brought against it in the absence of [the] declaratory judgment

18  action," and that "[declaratory defendant] has contended, and [declaratory plaintiff] has not

19  sufficiently rebutted that contention, that Microchip has never been accused of infringing the

20  patents-in-suit"). The declaratory plaintiff was simply concerned that its customers might be sued

21  for infringement (direct), although apparently its "customers could only infringe the patents-in-suit

22  by using [the declaratory plaintiff's] microprocessors in combination with other components not

23  supplied by [the declaratory plaintiff]." *Id.* at 939-40. The Federal Circuit held that, without the

24  declaratory plaintiff and defendant having adverse legal interests (*e.g.*, the plaintiff was subject to an

25  infringement suit itself or the plaintiff had an obligation to indemnify its customers), there was no

26

27      [6] Although *Microchip* is a pre-*MedImmune* case, its basic principles have essentially been
reaffirmed by the Federal Circuit in a post-*MedImmune* case. *See Creative Compounds, LLC v.
28  Starmark Labs.*, 651 F.3d 1303, 1316 (Fed. Cir. 2011).

1    subject matter jurisdiction.  The declaratory plaintiff's economic interest in clarifying its customers'

2    rights was not enough.  *See id.* at 943.

3         The Court further takes note of *Arris Group, Inc. v. British Telecommunications PLC*, 639

4    F.3d 1368 (Fed. Cir. 2011), where the Federal Circuit stated:

5              We have recognized that, where a patent holder accuses
          customers of direct infringement based on the sale or use of a
6              supplier's equipment, the supplier has standing to commence a
          declaratory judgment action if (a) the supplier is obligated to
7              indemnify its customers from infringement liability, or (b) there is a
          controversy between the patentee and the supplier as to the supplier's
8              liability for induced or contributory infringement based on the alleged
          acts of direct infringement by its customers.

9

10   *Id.* at 1375.  *See Arkema Inc. v. Honeywell Int'l*, 706 F.3d 1351, 1357 (Fed. Cir. Feb. 2013)

11   (clarifying that "*Arris* did not set forth an overarching test for a supplier's standing to seek a

12   declaratory judgment regarding its potential indirect infringement liability; rather, it identified

13   circumstances that have been held sufficient (rather than necessary) for declaratory judgment

14   jurisdiction") (emphasis omitted).

15        In the case at bar, it appears that AV's customers could be direct infringers simply by using

16   AV's Cloud TV H5 products/services.  However, as TVE has given up any claim of indirect

17   infringement (or even direct) against AV, AV would only have an adverse legal interest vis-a-vis

18   TVE if AV was obligated to indemnify its customers – *e.g.*, under an indemnity agreement or by

19   law.  *See, e.g.*, *Arris Group, Inc.*, 639 F.3d at 1375; *Visto Corp. v. Sproqit Techs., Inc.*, No. C-04-

20   0651 EMC, 2006 U.S. Dist. LEXIS 96173, at *15-16 (N.D. Cal. Oct. 4, 2006) (rejecting argument

21   that covenant not to sue was insufficient because it did not extend to, *e.g.*, customers; noting that

22   accused infringer had not provided any evidence that it had an indemnification agreement with any

23   customer); *Barnhardt Mfg. Co. v. Illinois Tool Works, Inc.*, No. 3:08-CV-617-W, 2010 U.S. Dist.

24   LEXIS 37729, at *16-17 (W.D.N.C. Apr. 16, 2010) (examining whether declaratory plaintiff would

25   be required to indemnify its customers under case law and statutory law).

26        AV has submitted evidence that it has indemnity obligations with at least thirteen customers.

27   *See* Docket No. 43 (Sereda Decl. ¶¶ 4-5).  It has also submitted evidence that it often indemnifies its

28   customers pursuant to customer agreements.  *See* Docket No. 29 (Sereda Decl. ¶ 6).  While TVE has

**United States District Court**
For the Northern District of California

15

1  challenged the evidence (*e.g.*, disputing the interpretation of an indemnification provision and

2  exceptions thereto[7]), at this juncture, the Court is satisfied that AV has made out a prima facie case

3  of subject matter jurisdiction.

4       At the hearing, TVE argued that indemnity obligations on the part of AV still would not be

5  enough to give rise to a case or controversy in the absence of some indication that TVE has

6  threatened AV's customers or has asserted that AV's customers infringe.  *See Visto*, 2006 U.S. Dist.

7  LEXIS 96173, at *15-16 (noting that there was no evidence that "Visto has made any threats to

8  Sproqit's customers"); *Bendix Commer. Vehicle, LLC v. Haldex Brake Prods. Corp.*, No. 1:09 CV

9  176, 2010 U.S. Dist. LEXIS 82894, at *11 (N.D. Ohio Aug. 13, 2010) (noting that there was no

10  "history of suing customers").  But here TVE's letter of April 11, 2013, does contain an implicit

11  assertion that AV's customers infringe.  As noted above, TVE states in its letter:

12           Please note that TVE has initiated and is currently litigating
             multiple patent infringement cases asserting the '936 Patent and the
13           '801 Patent against numerous video content *distributors*, network
             back-end *suppliers*, and *other companies* that routinely use content
14           delivery networks for distribution of video content in the course of
             doing business.
15
             Additionally, TVE has already entered into licensing
16           agreements with some of the leading technology companies operating
             in the video content-delivery network space, including Apple,
17           DirecTV and EchoStar.

18  Compl., Ex. C (letter) (emphasis added).

19       Furthermore, TVE steadfastly refuses to include AV's customers in its covenant not to sue,

20  yet has failed to explain why it has chosen to do so if it has no plans to sue.  While, as noted above,

21  this fact alone is not dispositive, it is a relevant factor.  The Court therefore concludes that AV has

22  established a prima facie case of subject matter jurisdiction.[8]

23

24  _____

25       [7] In the parties' joint letter, TVE, in making its argument, appears to have left out a
         significant phrase from the provision on exceptions to indemnification.

26       [8] To the extent TVE has asked the Court, in the alternative, to decline to exercise jurisdiction
27       over the declaratory judgment claims – more specifically, on the basis that AV's actions are
         "contrived" and an "over-reaction" to TVE's letter, Mot. at 12, that request for relief is also denied.
28       Given the content of TVE's letter of April 11, 2013, any claim of manufacturing a controversy on
         the part of AV is weak.

United States District Court

For the Northern District of California

B.      Personal Jurisdiction

        1.      Legal Standard

        Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move for a dismissal based on a lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  Where a court considers only written materials (*i.e.*, there is no full evidentiary hearing), a plaintiff need only make a prima facie showing of jurisdictional facts in order to overcome a defendant's motion to dismiss.  *See Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  In deciding whether, in the instant case, this Court has personal jurisdiction over TVE, it must look to Federal Circuit, and not Ninth Circuit, precedent because patent law is implicated.  *See Brecenkridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006) (stating that "[t]he issue of personal jurisdiction in a declaratory action for non-infringement is 'intimately related to patent law' and thus governed by Federal Circuit law regarding due process").

        2.      Specific Jurisdiction

        In the instant case, AV does not make any assertion that TVE is subject to general jurisdiction in this forum.  Rather, its only contention is that there is specific jurisdiction over TVE. In support of this contention, AV points to the following facts: (1) TVE sent the letter accusing AV of infringement to AV in San Jose, California; (2) TVE has litigated multiple cases (a total of six) in this District regarding the very same or related patents; and (3) TVE has entered into licensing agreements with other companies located in this District (*i.e.*, Apple and DirecTV).

        Under Federal Circuit law, it is clear that "the sending of an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction over an out-of-state patentee."  *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361 (Fed. Cir. 2001).  This is because, "[a]s a matter of patent law policy, . . . 'principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum."  *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011).

        But "certain other patent enforcement actions, taken in conjunction with the issuance of cease-and-desist letters, are sufficient to support specific jurisdiction over a patentee in a foreign

1  forum." *Id.* This principle was most clearly articulated in the Federal Circuit's decision *Avocent*

2  *Huntsville Corp. v. Aten International Co.*, 552 F.3d 1324 (Fed. Cir. 2008). In *Avocent*, the Federal

3  Circuit noted that, "[f]or the exercise of personal jurisdiction to comport with fair play and

4  substantial justice, there must be other activities directed at the forum and related to the cause of

5  action besides the letters threatening an infringement suit." *Id.* at 1333 (internal quotation marks

6  omitted). Notably, those other activities need not be directed at the declaratory judgment plaintiff

7  who is a resident of the forum. *See id.* at 1334. But those activities must

8  > relate to the enforcement or the defense of the validity of the relevant
   > patents. Examples of these "other activities" include initiating judicial
9  > or extrajudicial patent enforcement within the forum, or entering into
   > an exclusive license agreement or other undertaking which imposes
10 > enforcement obligations with a party residing or regularly doing
   > business in the forum.

11

12 *Id.* The *Avocent* court noted, however, that,

13 > [w]hile exclusive licensing agreements and other undertakings that
   > impose enforcement obligations on a patentee or its licensee reflect the
14 > kind of "other activities" that support specific personal jurisdiction in
   > a declaratory judgment action, the defendant patentee's own
15 > commercialization activity does not. What the patentee makes, uses,
   > offers to sell, sells, or imports is of no real relevance to the
16 > enforcement or defense of a patent, because "the federal patent laws
   > do not create any affirmative right to make, use, or sell anything."
17 > "The franchise which the patent grants, consists altogether in the right
   > to exclude every one from making, using, or vending the thing
18 > patented, without the permission of the patentee. This is all that he
   > obtains by the patent."

19

20 *Id.* at 1335. *See, e.g., Radio Sys.*, 638 F.3d at 790 (noting that "Mr. Sullivan's correspondence with

21 Radio Systems was focused on generating a market for the Wedgit, not on enforcing or defending

22 the '141 patent").

23      In the instant case, it is clear that TVE has engaged in judicial patent enforcement (with

24 respect to the patents at issue or a related patent) in this District multiple times. As reflected in the

25 parties' papers, it has initiated six patent infringement lawsuits in the District. TVE tries to argue

26 that these lawsuits should not be given much, if any weight, because they are too old – the last case

27

28

United States District Court

For the Northern District of California

concluded in November 2011, and "no new cases [have been] initiated for almost four years."[9]  Mot. at 17.  Thus, according to TVE, "[t]he pattern of [its] recent litigation demonstrates that TVE's venues for enforcement have shifted away from this District to the point that these contacts are no longer relevant to the specific personal jurisdiction analysis for ActiveVideo's purported cause of action."  Mot. at 17.  But this argument lacks merit, particularly in light of the fact that (as AV points out) the case that concluded in November 2011 – *i.e.*, the TVE/Sony action that this Court inherited from Judge Patel – did not really conclude in November 2011 because TVE took an appeal to the Federal Circuit and then filed a petition with the Supreme Court which was ultimately denied in January 2013.  Thus, through at least January 2013, TVE sought to litigate in this District one of the same patents at issue in the instant case.[10]  Accordingly, TVE's claim that its enforcement efforts have shifted away from the Northern District of California are problematic.

As for TVE's licensing agreements with forum residents Apple and DirecTV, they are also part of the calculus.  While there is nothing to indicate that those licenses were exclusive licenses, and while a patent holder's commercialization activity does not count as patent enforcement activity, here, TVE admits that the licenses resulted from *patent infringement suits* that TVE brought against the respective companies, not part of the regular business of commercialization.  *See* Mot. at 16.  Thus, the licenses are related to patent *enforcement* activity.

TVE fairly points out that the Apple lawsuit was not brought in this forum but rather was brought in the District of the District of Columbia.  According to TVE, because the lawsuit was brought in a different forum, the license that resulted from the lawsuit should not count, even if the licensee (Apple) is a resident of the forum.  *See* Mot. at 17 (citing *CommVault Sys., Inc. v. PB&J Software*, No. C-13-1332 MMC, 2013 U.S. Dist. LEXIS 89168 (N.D. Cal. June 25, 2013)).  This argument is not without some force – although the Court takes note that *CommVault* did not address

---

[9] TVE's chart in its opening brief shows that the six cases were initiated from August 2006 through July 2009.  *See* Mot. at 2.  The alleged termination dates for the six cases are from June 2007 through November 2011.  *See* Mot. at 2.

[10] In its reply brief, TVE argues that its "appeals activity at the U.S. Supreme Court and the U.S. Court of Appeals for the Federal Circuit cannot be imputed to this District."  Reply at 11.  This argument misses the point – *i.e.*, TVE was asking in effect for permission to continue litigation in this District.

that specific situation.  Rather, in *CommVault*, Judge Chesney simply made note that a suit against a forum resident (California) in a different forum (Texas) should not be part of the calculus in determining whether there is personal jurisdiction within the forum (California) in that suit. *CommVault* did not address whether such a suit might inform the overall calculus of whether the patentee has engaged in affirmative acts of enforcement in the forum.

Even if the Apple licensing agreement should not count for the reason articulated by TVE, that does not negate the fact that there was a licensing agreement with DirecTV, a forum resident, that resulted from a lawsuit in this District, and not a different forum.  To the extent TVE tries to argue that the DirecTV license should still be disregarded because the license has nothing to do with AV, *see* Mot. at 16 (noting that the "licenses are not directed at ActiveVideo" and "are unrelated to ActiveVideo's activities"), that argument is without merit.  As noted above, the Federal Circuit has specifically noted that "other activities" in the forum do not have to concern the declaratory plaintiff/forum resident in order to determine jurisdiction.  *See Avocent*, 552 F.3d at 1334 (stating that, "[w]hile 'the plaintiff need not be the forum resident toward whom any, much less all, of the defendant's relevant activities were purposefully directed,' we have consistently required the defendant to have engaged in 'other activities' that relate to the enforcement or the defense of the validity of the relevant patents").

3.    Fundamentally Unfair

Finally, TVE contends that, even if the Court finds that there are sufficient minimum contacts based on its patent enforcement activity in this District, the Court must still evaluate "whether assertion of personal jurisdiction [would be] reasonable and fair.'"  *See Inamed*, 249 F.3d at 1360; *see also International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (stating that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'").  On this factor, the burden lies within TVE, as the declaratory judgment defendant, to convince the Court that the exercise of personal jurisdiction over it is not reasonable and fair.  *See Inamed*, 249 F.3d at 1363.  More specifically, TVE has the burden of "'present[ing] a *compelling* case that the

20

United States District Court
For the Northern District of California

presence of some other considerations would render jurisdiction unreasonable.  Most such considerations usually may be accommodated through  means short of finding jurisdiction unconstitutional.  For example, . . . a defendant claiming substantial inconvenience may seek a change of venue.'"  *Id.* (emphasis added).

> In addressing the "reasonableness" of exercising jurisdiction, the Supreme Court has stated that the inquiry would depend on an evaluation of several factors: (1) the burden on the defendant, (2) the interests of the forums State, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Id.*  The Federal Circuit has noted that "cases where a defendant may defeat otherwise constitutional personal jurisdiction should be 'limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are *clearly* outweighed by the burden of subjecting the defendant to litigation within the forum.'"  *Id.* (emphasis added).  *See, e.g.*, *id.* at 1364 (stating that, "[g]iven California's substantial interest in 'providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors,' and [declaratory judgment plaintiff] Inamed's obvious interest in being able to obtain relief in such convenient forum, we conclude that [declaratory judgment defendant] Dr. Kuzmak's has failed to present 'a compelling case' that the exercise of jurisdiction would be unreasonable").

In the instant case, TVE has not met its burden of making a compelling case of unreasonableness.  For example, TVE argues that factor (1) above weighs in its favor because it is a small D.C.-based company and is already litigating five separate matters in the District of Delaware regarding the patents at issue.  (The Delaware cases were initiated from December 2012 to January 2013.)  *See* Mot. at 2-3, 18.  But, as noted above, the Federal Circuit has indicated that "a defendant claiming substantial inconvenience may seek a change of venue."  *Inamed*, 249 F.3d at 1363.  Furthermore, TVE's argument rings hollow given its extensive history of enforcement litigation in this District noted above.

As for factors (2), (3), and (5), TVE contends that any interest on the part of California or AV is limited because the Court has before it what is, in essence, a premature business dispute.  *See* Mot. at 19.  But as discussed above, based on the letter of April 11, 2013, that TVE sent to AV

**United States District Court**

For the Northern District of California

alone, there is clearly a case or controversy.  Furthermore, AV has a substantial relationship with this forum given that its principal place of business is in California.  For that reason as well, California has an interest in adjudicating this dispute.

Finally, as to factor (4) above, TVE contends that it would be a burden for both this court and the court in Delaware to address the same patents.  *See* Mot. at 1; Reply at 14.  But this Court has already addressed at least one patent previously (the '801 patent), and other courts in this District have also addressed one of the patents or related patents.  Moreover, it is not uncommon for the same patents to be litigated in different fora, even at the same time.  Finally, even though the Delaware court would be addressing the same patents, that does not mean, *e.g.*, that the same claim terms would be construed as there are different defendants in those cases.

## II.   CONCLUSION

For the foregoing reasons, the Court denies TVE's motion to dismiss based on lack of subject matter jurisdiction and personal jurisdiction.

This order disposes of Docket No. 8.


IT IS SO ORDERED.


Dated:  September 30, 2013

_____
EDWARD M. CHEN
United States District Judge